UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRENE ALEMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 1:20-cv-6925 |
| MCDONALD'S CORPORATION, | ) ) ) |
| Defendant. | ) ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, the Plaintiff, Irene Aleman (hereinafter "Aleman" or Plaintiff") and files her Complaint and Demand for Jury Trial against the Defendant, McDonald's Corporation (hereinafter "McDonald's or Defendant") and in support states the following:

**NATURE OF CLAIMS**

1.  This is an action for monetary damages, pursuant Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. (hereinafter "Title VII") and Illinois common law to redress Defendant's unlawful sexual harassment of Plaintiff, Defendant's discriminatory and retaliatory employment practices against Plaintiff because of her sex and Defendant's intentional infliction of emotional distress leading to Plaintiff's constructive discharge

**JURSIDICTION AND VENUE**

2.  This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII.

3. This Court has supplemental jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C. § 1367(a) because they arise from the same common nucleus of operative fact as Plaintiff's federal claims.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## THE PARTIES

5. Plaintiff, ALEMAN, is a citizen of the United States and was at all times material a citizen of the State of Illinois, residing in Cook County, Illinois.

6. Defendant, MCDONALD'S, is an Illinois Foreign BCA Corporation, registered in the State of Delaware.

7. Defendant is an employer as defined by the laws under which this action is brought and employs the requisite number of employees

## PROCEDURAL REQUIREMENTS

8. Plaintiff has complied with all statutory prerequisites to filing this action.

9. Plaintiff filed a timely claim with the Equal Employment Opportunity Commission (hereinafter "EEOC") against Defendant, satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e), based on sexual harassment, sex, , age, national origin, and retaliation.

10. Plaintiff's EEOC charge was filed within three hundred (300) days after the alleged unlawful employment practices occurred.

11. On August 25, 2020, the EEOC issued a Dismissal and Notice of Rights.

12. This Complaint was filed within ninety (90) days following Plaintiff's receipt of the EEOC's Dismissal and Notice of Rights.

## FACTUAL ALLEGATIONS

13. Plaintiff is a Hispanic female.

14. Plaintiff began working for the Defendant in February 1997 and held a variety of positions, including the last position as a Hamburger University Facilitator until her constructive discharge in February 2020.

15. Because of her sex, Plaintiff was targeted, treated in a disparate manner, and subjected to severe and pervasive sexual harassment. No similarly situated males were treated in the same manner as Plaintiff.

16. On or about October 2017, Plaintiff's female co-worker Kerry Wright began sexually assaulting and harassing Plaintiff. In the presence of students and another co-worker, Ms. Wright repeatedly touched and grabbed Plaintiff's derriere and made sexually explicit comments such as "I saw you there and I couldn't resist, I wanted to feel your ass so bad."

17. Plaintiff immediately reported the incident to Facilitators, Jose Gonzalez, Anthony Hatch and Windy Ross.

18. Then on or about November 2017, Plaintiff was facilitating a student activity with co-workers present, when Ms. Wright walked past Plaintiff, and spanked her derriere. Also present was Facilitator, Windy Ross who stated to Plaintiff "she grabbed your derriere again!"

19. Defendant continued to allow Ms. Wright to sexually assault and harass Plaintiff during work in the Hamburger University Oakbrook building and continued the assaults and harassment when the Defendant moved to a newer Hamburger University building location in Chicago, IL.

20. On or about May 2018, Plaintiff reported the multiple sexual assaults and harassment to Corey Luering, who indicated he would ensure Plaintiff would not facilitate classes with Ms. Wright and will investigate Plaintiff's allegations further.

21. On September 2018, Mr. Hamburger University left the company, but before he did he conducted a satisfactory performance review with Plaintiff and informed her that she would report to Raynah D'Souza after his departure from the Defendant.

22. Ms. Wright continued to harass the Plaintiff, taking her shirt off in front of Plaintiff, making statements such as "that skirt looks good on you," " I love the way clothes look on you, I can see from the back your legs and butt," and "You have a big butt and breast."

23. Plaintiff reported the incident to Ms. D'Souza, National Training Manager and Bill Mitchell, Dean of Hamburger University. Both indicated to Plaintiff that Defendant was investigating Plaintiff's allegations.

24. Shortly thereafter, Plaintiff and Ms. D'Souza were in a meeting when Plaintiff asked, "you are aware of Kerry Wright sexually assaulted and currently harassing me?" Ms. D'Souza acknowledged she was aware of Plaintiff's claims and stated, "I know Kerry very well and she must only be joking with you" Plaintiff replied, "no she was not and I have witnesses." Ms. D'Souza then proceeded to inform Plaintiff "I do not believe you; Kerry is now the class lead; facilitator and you will report and work with her."

25. On or about October 2018, Ms. Wright was designated as the new class lead, a position wherein the Plaintiff was forced to report to and work under Ms. Wright a majority of the time.

26. Plaintiff attempted to continue to ignore Ms. Wright's advances and harassment. In retaliation Ms. Wright reported to Ms. D'Souza the Plaintiff was "pushing back on her and not supporting her."

27. On November 2018, Ms. D'Souza called Plaintiff in for a meeting and stated to Plaintiff, "Irene I need you to stop pushing back on Kerry." When Plaintiff asked D'Souza to give her an example as to when she pushed back, Ms. D'Souza could not give Plaintiff an example – because there was none. Plaintiff again asked Ms. D'Souza "you are aware that I have been sexually assaulted and continued to be harassed by Ms. Wright, and no one has done anything to address this serious issue." In which, Ms. D'Souza replied "stop pushing back."

28. Shortly after her meeting with Ms. D'Souza, Plaintiff was then given a negative Performance review which indicated Plaintiff needed improvement. However, the performance review was not provided to Plaintiff until February 2019. The performance review indicated Plaintiff needed to focus on the areas of communication with Ms. Wright and her team, to support the team, Defendant's projects and not to "push back and not seek to understand." Plaintiff was shocked as this was the first negative performance review ever received in Plaintiff's entire career with Defendant and felt retaliated against for reporting her allegations against Ms. Wright.

29. In February 2019, Plaintiff and Ms. Wright were facilitating a class together, when Ms. Wright continued to create a hostile work environment. Ms. Wright began using her personal computer to video tape Plaintiff while facilitating classes for her personal use and further stated to Plaintiff "how she liked to watch Plaintiff and enjoyed watching her," and went as far to show Plaintiff that she recorded her and saved it to a USB while co-worker Sharon Bell witnessed the entire event.

30. Shortly after, Plaintiff reported to Ms. D'Souza, that Ms. Wright had videotaped Plaintiff without her permission and saved the recording onto a USB for her personal use, Ms. D'Souza again refused to investigate and took no further action.

31. On or about March 2019, Plaintiff requested to work in a different department and Ms. D'Souza told Plaintiff "NO!" Ms. D'Souza stated she was not going to support Plaintiff and Plaintiff should just resign if she did not like the work environment and further stated Plaintiff was too old and needed to be more relevant and adapt to the new Defendant's culture.

32. April 19, 2019 Ms. Wright stated during a team development meeting, if anyone knew about the honey in one of the storage closets? An employee indicated she brought it in when she was sick. Ms Wright said "Oh okay, because someone told me that honey with lemon is a very Mexican thing, to try," Knowing that Plaintiff was of Mexican decent and the only person of Mexican descent in the room, creating a hostile work environment for the Plaintiff.

33. Again, on or about April 2019, Plaintiff requested a meeting with Ms. D'Souza to discuss all the events that happened from 2017 to 2019. Ms. D'Souza stated, "what do you want me to do?" Plaintiff replied, "I want you to be aware or I will go to Human Resources." Ms. D'Souza then replied, "go to Human Resources, I know Ms. Wright and I am sure she didn't mean it."

34. On or about May 2019, Plaintiff filed a formal complaint against Ms. Wright, with Laura Coogan in Human Resources for sexual assault and continued sexual harassment.

35. Shortly after, Human Resources concluded the investigation and informed Plaintiff there were no cameras or videos to prove Plaintiff's sexual assault and harassment allegations. Bill Mitchell, Dean and Ms. D'Souza made the final decision not to remove or take any action

6

against Ms. Wright and proceeded to give Plaintiff only two (2) options, to move to a different department or leave the company.

36. Plaintiff attempted to move to a different department and was told by Ms. D'Souza she would not approve or support any of Plaintiff's requests.

37. Ms. D'Souza further stated Plaintiff was not doing her job, she became demeaning toward the Plaintiff and stated she could not understand Plaintiff when she spoke. Ms. D'Souza further stated that Defendant was hiring new people fresh out of college that the Plaintiff was not meeting the facilitation standards, which was clearly quite different from all previous performance reviews received throughout Plaintiff's career with the Defendant. Ms. D'Souza continued to create a hostile work environment, which resulted in Plaintiff having a nervous breakdown in front of Ms. D'Souza, due to her actions toward Plaintiff.

38. Sharon Bell, Windy Ross, Anthony Hatch and Olbi Dilday witnessed the hostile working environment Ms. D'Souza created toward Plaintiff.

39. On or about August 2019 Plaintiff was placed on PIP (Plan Improvement Process), which started on September 1, 2019 to November 1, 2019.

40. At this time, it was recommended again that Plaintiff resign from the company due to her nervous breakdown and sexual assault and harassment complaints.

41. On September 2019, Plaintiff experienced another nervous breakdown and was threatened by Ms. D'Souza that "Plaintiff better get herself together because things will not look good for her."

42. Later in September 2019, Plaintiff met with Mr. Mitchell, again and he stated that it was in Plaintiff's best interest to leave on her own.

43. On September 2019, as Ms. D'Souza was preparing to take a sabbatical, she requested Plaintiff to report to Jose Villamar a Hispanic, during her absence because he able to understand Plaintiff.

44. During the eight weeks Ms. D'Souza was on leave Plaintiff met all of her goals in her PIP and Mr. Villamar indicated to Plaintiff that she need not to worry about anything to continue doing what she was doing.

45. When Ms. D'Souza returned to work, she extended Plaintiff's goals an additional sixty (60) days.

46. On or about the first week of December 2019, Ms. D'Souza indicated that Plaintiff did not see any improvements with regard to her PIP.

47. After Plaintiff's meeting with Ms. D'Souza, co-worker Ms. Bell witnessed Plaintiff having another nervous breakdown because of Defendant's actions. Plaintiff informed Ms. Bell that she was told by Ms. D'Souza to stay away from Ms. Bell and any efforts seeking help or assistance Defendant has refused multiple times.

48. The relationship with Ms. Bell had nothing to do with Plaintiff's performance. In fact, Mr. Villamar also confided to Plaintiff that Ms. D'Souza had something against Plaintiff and also stated, "I don't know what's wrong, she just doesn't want you here and she will do anything she could to get you out."

49. In January of 2020, Ms. D'Souza informed Plaintiff it would be Plaintiff's best interest to leave Defendant's employ and gave no other option.

50. On or about February 2020 Plaintiff was offered an unusual severance package which was not Defendant's customary severance package and forced Plaintiff to resign.

51. Defendant's illegal conduct has damaged Plaintiff.

52. Plaintiff has had to retain the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

## Count I: Sexual Harassment in Violation of Title VII

53. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

54. Defendant's sexually harassing actions and comments were so frequent and severe that it created hostile work environment.

55. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

56. Defendant's unlawful conduct in violation of title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of exemplary and/or punitive damages.

## Count II: Sex Based Discrimination in Violation of Title VII

57. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

58. At all times relevant to this action, Plaintiff was in a protected category under Title VII because of her sex, female.

59. Defendant is prohibited under Title VII from discriminating against Plaintiff because of her sex with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

60. Defendant violated Title VII by terminating and discriminating against Plaintiff based on her sex.

61. Defendant intentionally discriminated against Plaintiff on the basis of her sex.

62. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

63. Defendant's unlawful conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of exemplary and/or punitive damages.

**Count III: Retaliation in Violation of Title VII**

64. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

65. Plaintiff engaged in protected activity under Title VII on more than one occasion while employed by Defendant.

66. Defendant engaged in intentional retaliation against Plaintiff for her participation in protected activity.

67. Defendant's conduct violated Title VII.

68. Plaintiff has satisfied all statutory prerequisites for filing this action.

69. Defendant's discriminatory conduct, in violation of Title VII, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which she is entitled to damages.

70. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

71. Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling her to punitive damages.

### Count IV: Intentional Infliction of Emotional Distress

72. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

73. Defendant sexual harassment of, discrimination against, and retaliation against Plaintiff was intentional or at minimum reckless.

74. Defendant's conduct was extreme and outrageous.

75. Defendant's extreme and outrageous conduct caused Plaintiff to suffer from severe emotional distress.

76. Plaintiff suffered from severe emotional distress.

### Count V: Constructive Discharge

77. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

78. Defendant deliberately created intolerable working conditions as it failed to provide a work environment free from discrimination, harassment, and hostility.

79. Defendant's actions were done with the intent to drive Plaintiff to resign as Defendant was repeatedly on notice of Plaintiff's complaints and witnessed the discrimination and harassment first-hand and failed to take remedial action.

80. Defendant's deliberate actions forced Plaintiff to resign her position

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, and prejudgment interest thereon;

b) Grant Plaintiff her costs and an award of reasonable attorneys' fees (including expert fees); and

c) Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

/s/ Gary Martoccio
Gary Martoccio
ARDC#: 6313431
Spielberger Law Group
4890 W. Kennedy Blvd., Suite 950
Tampa, FL 33609
T: 800.965.1570
F: 866.580.7499
gary.martoccio@spielbergerlawgroup.com

*Attorney for the Plaintiff*