UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRENE ALEMAN, ) | |
| ) | |
| Plaintiff, ) | Case No. 20-cv-6925 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| McDONALD'S CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Irene Aleman is suing her former employer, McDonald's Corporation, bringing federal and state law claims. She basically alleges sexual harassment, discrimination, and retaliation. McDonald's has moved to dismiss the state law claims as preempted by the Illinois Human Rights Act. For the reasons that follow, the motion to dismiss is granted.

### Background

Irene Aleman, a Hispanic female, worked for McDonald's from February 1997 to February 2020. *See* Cplt., at ¶¶ 13–14 (Dckt. No. 1). Twenty years into her career, she started to experience difficulties in the workplace. She alleges that in October 2017, one of her female coworkers, Kerry Wright, began sexually assaulting and harassing her. *Id.* at ¶ 16. She describes several incidents of harassment and assault, including inappropriate grabbing and touching and sexually explicit comments. *Id.* ("Wright repeatedly touched and grabbed Plaintiff's derriere and made sexually explicit comments."); *id.* at ¶ 18 ("Wright walked past Plaintiff, and spanked her derriere."); *id.* at ¶ 19 (alleging that Wright "continued the assaults and harassment"); *id.* at ¶ 22 (alleging that Wright took "her shirt off in front of Plaintiff" and made sexually explicit comments).

Aleman repeatedly reported Wright's misconduct to "Facilitators,"[1] fellow employees, and supervisors. *Id.* at ¶¶ 17, 20, 23–24. Some supervisors responded that the company was investigating her reports. *Id.* at ¶¶ 20, 23. But Aleman alleges that instead of taking action, her manager, Raynah D'Souza, told her "I do not believe you." *Id.* at ¶¶ 21, 24. And about a year after the harassment began, Aleman was forced to work under her harasser. *Id.* at ¶ 25 ("On or about October 2018, Ms. Wright was designated as the new class lead, a position wherein the Plaintiff was forced to report to and work under Ms. Wright a majority of the time.").

While Aleman tried to ignore Wright's "advances and harassment," Aleman's manager (again, D'Souza) told her that she needed to "stop pushing back." *Id.* at ¶¶ 26–27. Soon after this meeting, Aleman received a negative performance review. *Id.* at ¶ 28. "[T]his was the first negative performance review ever received in Plaintiff's entire career with Defendant and [she] felt retaliated against for reporting her allegations against Ms. Wright." *Id.*

Aleman also alleges that in February 2019, Wright "began using her personal computer to video tape Plaintiff" while the two were facilitating classes together. *Id.* at ¶ 29. The videos were for Wright's personal use, not for any legitimate purpose. *Id.* When Aleman reported this behavior to D'Souza, she "again refused to investigate and took no further action." *Id.* at ¶ 30.

In March 2019, Aleman requested to work in a different department. D'Souza told her that she "was not going to support" her, and that Aleman "should just resign if she did not like the work environment." *Id.* at ¶ 31. D'Souza also told Aleman that she was "too old and needed to be more relevant and adapt to the new Defendant's [sic] culture." *Id.*

The majority of the complaint focuses on the alleged sexual harassment and assault, and the responses by Aleman's supervisors. Aleman also describes one incident about ethnicity. In

---

[1] The complaint does not reveal who, exactly, a "Facilitator" is, or what they do.

April 2019, Wright made a comment about honey and lemon being "a very Mexican thing" with knowledge of Aleman's Mexican heritage, and did so knowing that Aleman was "the only person of Mexican descent in the room." *Id.* at ¶ 32. Aleman does not explain whether she reported this comment to anyone.

That month, Aleman requested a meeting with D'Souza to discuss the events of the previous year and a half. *Id.* at ¶ 33. D'Souza refused to meet with her and told her to go to Human Resources instead. *Id.*

In May 2019, Aleman filed a formal complaint with Human Resources for sexual assault and continued sexual harassment. *Id.* at ¶ 34. Human Resources conducted an investigation, and informed Aleman that "there were no cameras or videos to prove Plaintiff's sexual assault and harassment allegations." *Id.* at ¶ 35. "Bill Mitchell, Dean [of Hamburger University] and Ms. D'Souza made the final decision not to remove or take any action against Ms. Wright and proceeded to give Plaintiff only two (2) options, to move to a different department or leave the company." *Id.* When Aleman tried to move to a different department (for the second time), D'Souza told her "she would not approve or support any of Plaintiff's requests." *Id.* at ¶ 36.

D'Souza also told Aleman that she "was not doing her job" or meeting the facilitation standards, and that McDonald's was hiring new people "fresh out of college." *Id.* at ¶ 37. "Ms. D'Souza continued to create a hostile work environment, which resulted in Plaintiff having a nervous breakdown in front of Ms. D'Souza, due to her actions toward Plaintiff." *Id.*

In August 2019, Aleman was placed on a two month "Plan Improvement Process" (a "PIP"). *Id.* at ¶ 39. At that point, "it was recommended" – the complaint doesn't say by whom – "that Plaintiff resign from the company due to her nervous breakdown and sexual assault and harassment complaints." *Id.* at ¶ 40.

Aleman experienced another nervous breakdown in September 2019. *Id.* at ¶ 41. D'Souza told her that she needed to get better "because things will not look good for her." *Id.* And later that month, Bill Mitchell (the "Dean of Hamburger University") told Aleman that it was "in [her] best interest to leave on her own." *Id.* at ¶¶ 23, 42.

D'Souza then went on sabbatical. *Id.* at 43–44. While she was gone, Aleman reported to Jose Villamar. *Id.* While reporting to him "[d]uring the eight weeks Ms. D'Souza was on leave," Plaintiff "met all of her goals in her PIP and Mr. Villamar indicated to Plaintiff that she need not to [sic] worry about anything [and] to continue doing what she was doing." *Id.* at ¶ 44. But when D'Souza returned, she extended Aleman's PIP goals another 60 days. *Id.* at ¶ 45.

In December 2019, D'Souza "indicated" that Aleman "did not see any improvements with regard to her PIP." *Id.* at ¶ 46. Aleman then suffered a third nervous breakdown. *Id.* at ¶ 47. Villamar then told Aleman that D'Souza had something against her: "I don't know what's wrong, she just doesn't want you here and she will do anything she could to get you out." *Id.* at ¶ 48.

In January 2020, D'Souza told Aleman that it "would be [in her] best interest to leave" and "gave no other option." *Id.* at ¶ 49. In February, Defendant offered Aleman "an unusual severance package" – "not Defendant's customary severance package" – and "forced Plaintiff to resign." *Id.* at ¶ 50.

Aleman filed this case in November 2020 and brings five claims against McDonald's. The first three Counts are federal claims under Title VII, based on sexual harassment (Count I), sex discrimination (Count II), and retaliation (Count III). Aleman also brings two state law claims for intentional infliction of emotional distress (Count IV) and constructive discharge (Count V).

4

McDonald's has moved to dismiss Aleman's two state law claims. *See* Def.'s Mtn. to Dismiss (Dckt. No. 13). It argues that those claims are preempted by the Illinois Human Rights Act ("IHRA") and that they fail to state a claim upon which relief can be granted.

## Discussion

The IHRA creates an administrative procedure for handling certain types of civil rights claims. The flipside of that procedure is that the Illinois Human Rights Commission, not courts, has the exclusive power to hear civil rights violations covered by the Act. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006).

The Act includes a preemption provision that divests courts of the power to hear civil rights claims. "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." *See* 775 ILCS 5/8-111(D). "That statutory provision tells us that the 'subject' of an alleged 'civil rights violation' must be heard under the procedures of the Act." *See Richards v. U.S. Steel*, 869 F.3d 557, 563 (7th Cir. 2017). The Illinois Supreme Court has held that "if a common law action is in essence one which seeks redress for a 'civil rights violation' as defined by the Act and there is no basis for the action other than the Act, the circuit court lacks jurisdiction to adjudicate the claim." *See Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 227 Ill. Dec. 98, 687 N.E.2d 21, 23 (1997) (citing *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 203 Ill. Dec. 454, 639 N.E.2d 1273, 1276 (1994)).

"But the Act does *not* call for preemption in the broader sense that all claims *arising* out of an employment relationship are precluded." *See Richards*, 869 F.3d at 563 (emphasis in original). So tort claims based on workplace misconduct are not always preempted.

It depends on where the duties come from. "To draw the line between preemption versus not, the Illinois Supreme Court has boiled down the inquiry as follows: whether a court 'may exercise jurisdiction over a tort claim depends on whether the tort claim is inextricably linked to a civil rights violation such that there is no *independent* basis for the action apart from the Act itself.'" *Id.* at 564 (quoting *Maksimovic*, 687 N.E.2d at 23) (emphasis in original). "Put another way, the key to preemption is not whether the facts that support a common law tort claim (like intentional infliction of emotional distress) would also support a claim under the Human Rights Act, but rather whether the plaintiff can prove the elements of the tort '*independent* of any legal duties created by the Illinois Human Rights Act.'" *Id.* (quoting *Maksimovic*, 687 N.E.2d at 24) (emphasis in original). The key is independent *duties*, not independent *facts*.

At times, McDonald's suggests that the Act preempts the common law claims because there is factual overlap. *See* Def.'s Mem. in Supp. of Mtn. to Dismiss, at 3 (Dckt. No. 14) ("Plaintiff does not allege any new facts to support her IIED claim."); *id.* at 4 ("Likewise, Plaintiff's constructive discharge claim is subject to dismissal because the factual allegations that support these claims are inarguably intertwined with her harassment and discrimination claims.").

Factual overlap is not what matters. "It does not matter that the claims have factual overlap; the issue is whether plaintiff can state a claim without reference to the Illinois Human Rights Act." *See Hespe v. City of Chicago*, 307 F. Supp. 3d 874, 889 (N.D. Ill. 2018); *see also Torres v. Merck Sharp & Dohme Corp.*, 255 F. Supp. 3d 826, 832 (N.D. Ill. 2017) ("*Factual* overlap is *not* the dividing line between preemption or not.") (emphasis in original).

Instead, "the concrete question to ask is whether the plaintiff states a valid common-law claim without needing to rely on the rights and duties created by the Human Rights Act."

6

*Richards*, 869 F.3d at 564; *see also Naeem*, 444 F.3d at 602–03 ("[I]f a plaintiff can allege facts sufficient to establish elements of a tort, that tort is not preempted by the IHRA."). So factual overlap between statutory and common law claims does not matter if a plaintiff is not relying on rights or duties created by the IHRA.

A good example is inappropriate physical contact. That act could be sexual harassment. And it could be battery, too. But if a plaintiff can satisfy the elements of a common law battery claim, without relying on rights under the IHRA, there is no preemption. *See Maksimovic*, 687 N.E.2d at 23 ("[W]hether the circuit court may exercise jurisdiction over a tort claim depends upon whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself.") (holding that "clearly" a battery claim was not preempted because plaintiff's tort claim was "not inextricably linked to a civil rights violation"). Battery is battery, even if the Act did not exist.

The question is whether the complaint states a common law claim based on duties that are independent of any rights or duties created by the Act. If so, "she can pursue tort claims free of statutory preemption." *See Richards*, 869 F.3d at 564–65. If not, then the claim is preempted by the Act. Claims that rely *on* the Act must proceed *under* the Act.

I. **Intentional Infliction of Emotional Distress (Count IV)**

The first state law claim is intentional infliction of emotional distress. The Court concludes that the claim cannot survive without relying on the Act, and thus is preempted.

On its face, the complaint points to sexual harassment, discrimination, and retaliation as the basis for the claim of intentional infliction of emotional distress. Count IV is only five paragraphs long, and there isn't much there. It rests on harassment, discrimination, and retaliation, without much else. "Defendant['s] sexual harassment of, discrimination against, and

retaliation against Plaintiff was intentional or at minimum reckless." *See* Cplt., at ¶ 73 (Dckt. No. 1). And "Defendant's extreme and outrageous conduct caused Plaintiff to suffer from severe emotional distress." *Id.* at ¶ 75.

That claim uses the same terminology, and covers the same type of conduct, as the IHRA. The Act expressly prohibits sexual harassment, discrimination, and retaliation. *See* 775 ILCS 5/2-102(D) ("It is a civil rights violation . . . [f]or any employer, employee, agent of any employer, employment agency, or labor organization to engage in sexual harassment. . . ."); 775 ILCS 5/2-102(A), 775 ILCS 5/1-103(Q) ("It is a civil rights violation . . . [f]or any employer to refuse to hire, to segregate, to engage in harassment . . . or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination."); *id.* (defining "[u]nlawful discrimination" as "discrimination against a person because of his or her actual or perceived: race, color, religion, national origin, ancestry, age, sex . . . ."); 775 ILCS 5/6-101 ("It is a civil rights violation for a person, or for two or more persons to conspire, to . . . [r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment . . . .").

But again, the question is not whether the complaint is about conduct that is covered by the IHRA. The question is whether the state law claim could stand on its own two feet, without relying on the Act to prop itself up. *See Naeem*, 444 F.3d at 604 ("[T]he proper inquiry was not whether the facts that support Ms. Naeem's intentional infliction of emotional distress claim could also have supported a discrimination claim, but instead whether Ms. Naeem can prove the elements of intentional infliction of emotional distress independent of legal duties furnished by

8

the IHRA."); *Sanders v. Chicago Transit Authority*, 2020 WL 5253867, at *9 (N.D. Ill. 2020) ("[T]he question is whether Sanders can state an emotional-distress claim without relying on the legal duties created by the Human Rights Act.").

Courts must "ask whether [a plaintiff] can state a valid common-law claim without needing to rely on rights or duties sourced to the Human Rights Act." *See Richards*, 869 F.3d at 565. "The distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached; that is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not furnish[ ] the legal duty that the defendant was alleged to have breached, the IHRA does not preempt a state law claim seeking recovery for it." *See Naeem*, 444 F.3d at 604 (internal quotation marks and citations omitted).

The Act "does not preclude courts from exercising jurisdiction over all tort claims factually related to incidents of sexual harassment." *Id.* at 602. "'[D]iscrimination and intentional infliction of emotional distress are different wrongs,' and so torts that do not depend on a civil rights violation are not preempted." *Id.* at 604 (quoting *Sanglap v. LaSalle Bank FSB*, 345 F.3d 515, 519 (7th Cir. 2003)).[2]

---

[2] In *Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899 (7th Cir. 2002) (per curiam), the Seventh Circuit held that the IHRA preempted a claim of intentional infliction of emotional distress because the "factual allegations" were "identical" to a sexual harassment claim. "Quantock's claim of intentional infliction of emotional distress is supported by *factual* allegations identical to those set forth in her Title VII sexual-harassment claim." *Id.* at 905 (emphasis added); *see also Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017) ("Because the *facts* supporting Nischan's tort claim [for intentional infliction of emotional distress] are identical to those supporting her IHRA claim, the two claims are inextricably linked. *See Quantock*, 312 F.3d at 905. The IHRA thus preempts Nischan's claim.") (emphasis added). Both claims in *Quantock* (like the claims at issue here) involved inappropriate touching and unwanted verbal advances. But since *Quantock*, the Seventh Circuit has made clear that preemption does not turn on whether the claims share common facts. *See Richards*, 869 F.3d at 564; *Naeem*, 444 F.3d at 602–04. So this Court views the standard as clarified and restated in *Richards* and *Naeem*.

In sum, the question is not whether the conduct could give rise to a claim for sexual harassment, discrimination, and retaliation. The question is whether the conduct could give rise to a common law claim, even if the IHRA did not exist. If duties and rights under the IHRA are a linchpin of the claim, then the claim is preempted by the IHRA.

The complaint fails to state a common law claim against McDonald's for intentional infliction of emotional distress. That claim requires a showing that "(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *See Richards*, 869 F.3d at 566 (citing *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 Ill. Dec. 228, 798 N.E.2d 75, 80 (2003)). Note that the focus is on the conduct of the "defendant." *Id.*

A common law claim against an employer faces a hurdle that a claim under the IHRA does not. Recall, Aleman is only suing McDonald's, her former employer. So the question is not whether the complaint alleges a claim against the *employees* for intentional infliction of emotional distress without relying on duties created by the IHRA. Instead, the question is whether the complaint alleges a claim against *McDonald's* for intentional infliction of emotional distress without relying on duties created by the IHRA.

An employer is not automatically liable for the torts of its employees under Illinois common law. "Although the Human Rights Act imposes strict liability on an employer for a supervisor's misconduct, not so with the common law." *Id.* at 565; *see also id.* (noting that "the set of facts – that is, the alleged misconduct" on which the plaintiff can rely "is restricted only to those that the Illinois *common law* would attribute to" her employer) (emphasis in original).

10

Under Illinois common law, an employer can be held liable for the torts of its employees only if the employee commits the tort within the scope of employment. *Id.* (citing *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 467 (7th Cir. 2016)). Illinois courts look to Section 228 of the Restatement (Second) of Agency when considering whether an employee acted within the scope of employment. *Id.* "In keeping with Section 228, an employer is not liable for the acts of an employee where the acts complained of were committed solely for the benefit of the employee." *Id.* (citation omitted).

Sexual harassment and assault are not within the scope of employment. "And in the specific context of sexual assault, the sexual nature of the misconduct generally disqualifies the employee's act as being taken in furtherance of the employer's interest." *Id.* (citation omitted); *see also Powell v. City of Chicago*, 2021 IL App (1st) 192145, ¶ 23 ("In sexual assault cases, we have . . . inquired whether the assault furthered the employer's business. . . . [W]e have consistently found that sexual assault did not further an employer's business.") (citation omitted); *id.* at ¶ 25 ("Illinois cases are 'clear that as a matter of law acts of sexual assault are not within the scope of employment.'") (quoting *Deloney v. Bd. of Educ. of Thornton Twp.*, 281 Ill. App. 3d 775, 217 Ill. Dec. 123, 666 N.E.2d 792, 799 n.5 (1996)); *Doe ex rel. Doe v. Lawrence Hall Youth Servs.*, 2012 IL App (1st) 103758, 358 Ill. Dec. 867, 966 N.E.2d 52, 62 (2012) ("[S]exual assault *by its very nature* precludes a conclusion that it occurred within the employee's scope of employment under the doctrine of *respondeat superior*.") (citation omitted) (emphasis in original); *Doe v. Bd. of Educ. of City of Chicago*, 2020 WL 1445638, at *17 (N.D. Ill. 2020) ("[W]here an employee commits an intentional tort 'purely in his own interest' vicarious liability does not apply.") (quoting *Randi F. v. High Ridge YMCA*, 170 Ill. App. 3d 962, 120 Ill. Dec. 784, 524 N.E.2d 966, 970 (1988)).

11

The majority of Aleman's allegations relate to the harassing conduct of Wright, her coworker and (later) supervisor. *See, e.g.*, Cplt., at ¶¶ 16, 18–19, 22, 29 (Dckt. No. 1). Wright did not act within the scope of employment when she sexually harassed and assaulted Aleman. Her actions were taken for her benefit alone. And because the alleged misconduct was of a sexual nature, Wright's acts were not "in furtherance of [Defendant's] interest." *Richards*, 869 F.3d at 565.

Therefore, Wright's conduct cannot be attributed to McDonald's. So the allegations against Wright cannot give rise to a common law claim against McDonald's for intentional infliction of emotional distress. And that means that there's preemption. Aleman couldn't bring a claim against McDonald's for the conduct of Wright without relying on the Act, which (unlike the common law) creates strict liability for employers for sexual harassment. *See Geise*, 639 N.E.2d at 1277 (noting that the IHRA "imposes strict liability on the employer").

Without the allegations against Wright, Aleman is left with her allegations about other employees. The complaint alleges that other employees resisted her complaints and didn't believe her when she reported the harassment. *See* Cplt., at ¶¶ 17, 20, 23–24, 30 (Dckt. No. 1). She alleges that her manager, D'Souza, told her to "stop pushing back," refused her requests for a transfer, and said she "was not going to support" Aleman. *Id.* at ¶¶ 27, 31, 33, 36. She also alleges that she received negative performance reviews and was placed on a "Plan Improvement Process" in retaliation for her complaints. *Id.* at ¶¶ 28, 39. And ultimately, after she filed a complaint about the harassment, Human Resources found that her claim lacked any evidence, and no action was taken. *Id.* at ¶¶ 34–35. Several employees also encouraged her, and "forced" her, to resign from her position. *Id.* at ¶¶ 31, 37, 40, 42, 49.

But these facts, without reliance on the duties imposed by the IHRA, don't rise to the level of "extreme and outrageous conduct" necessary to support an emotional-distress claim. *See, e.g.*, *Naeem*, 444 F.3d at 606 (observing that courts hesitate "to find intentional infliction of emotional distress in the workplace because, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action") (internal quotation marks and citation omitted); *Gould v. Barrett*, 2002 WL 485342, at *9 (N.D. Ill. 2002) (collecting cases and holding that plaintiff failed to establish extreme and outrageous conduct, even where "an employer ignored an employee's concern for personal safety, reprimanded her for perceived shortcomings, accused her of poor sales despite having made her sales quota, . . . and made it extremely difficult for her to continue working"); *Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483, 372 Ill. Dec. 667, 992 N.E.2d 509, 518–19 (2013) ("A review of the allegations . . . stripped of the alleged civil rights violations, results in the remaining allegations that plaintiff had a long commute, difficult working conditions, long hours, and uncooperative colleagues and bosses. We cannot say . . . that such conduct is 'so extreme as to go beyond all possible bounds of decency' . . . . Accordingly, we hold plaintiff's tort claim is inextricably linked to a civil rights violation, *i.e.,* the retaliation he endured after reporting his supervisor's discriminatory conduct toward him. . . . Therefore, defendant's claim is preempted, and thus, barred, by the Human Rights Act.") (citations omitted); *see also Herrera v. Di Meo Bros., Inc.*, 2021 WL 1175212, at *6 (N.D. Ill. 2021).

In *Richards*, the Seventh Circuit considered the conduct of supervisors who made insulting remarks about an employee's weight and "grabbed a radio off of [her] chest." *See Richards*, 869 F.3d at 568. "Although none of these instances are a credit to a respectful

13

workplace, none of them, either alone or in combination, amount to 'extreme and outrageous' misconduct under Illinois law. This is especially true given that this all took place in the workplace, where Illinois common law (remember, the Human Rights Act is broader) pays special care to avoid transforming employer-employee disagreements into an emotional-distress claim." *Id.* And the inadequate response by company leadership didn't constitute extreme and outrageous conduct, either. *Id.* (holding that "insensitive remarks" made by HR personnel in response to complaints did not give rise to an intentional infliction of emotional distress claim); *see also id.* ("Nor were the human resources personnel required to believe Richards's version of events.").

At bottom, Aleman alleges that supervisors and other employees at McDonald's failed to take her allegations about harassment and discrimination seriously enough. But Aleman has come forward with no support in Illinois case law for the notion that such inaction could give rise to a claim for intentional infliction of emotional distress.

Even if that conduct by other employees (excluding Wright) could give rise to a common law claim, the duties arise from the Act. In the end, Aleman is alleging that they did not appropriately respond to her allegations of harassment and discrimination. That claim presupposes the existence of a right – a right not to be mistreated by Wright – that depends on the Act. The claim also presupposes the existence of a duty – a duty by McDonald's to respond appropriately to this sort of misconduct – that once again stems from the Act.

So, Aleman's allegations about Wright and the other employees do not give rise to a claim against McDonald's under Illinois common law, albeit for different reasons. Wright acted outside the scope of employment by engaging in sexual harassment and assault, so that conduct cannot be attributed to McDonald's. For the remaining employees, the conduct was not

14

sufficiently extreme and outrageous to give rise to a common law claim. And even if it was, the claim presupposes the existence of a right and a duty based on the Act, and thus is inextricably linked with the IHRA.

Overall, Aleman's complaint does not state an independent common law claim for intentional infliction of emotional distress against McDonald's. The complaint does not allege a basis for vicarious liability under the common law. Aleman cannot state a claim without relying on rights and duties under the IHRA, so the claim is preempted. *See Sanders*, 2020 WL 5253867, at *10 (dismissing an intentional infliction of emotional distress claim on preemption grounds because the complaint failed to allege vicarious liability). Count IV is dismissed.

## II.     Constructive Discharge (Count V)

The last claim is constructive discharge. Aleman alleges that McDonald's "deliberately created intolerable working conditions" by failing to prevent "discrimination, harassment, and hostility." *See* Cplt., at ¶ 78 (Dckt. No. 1). She alleges that McDonald's acted "with the intent to drive Plaintiff to resign." *Id.* at ¶ 79. McDonald's argues that the claim is "inextricably linked to, *premised on* and *rooted in* her civil rights claims." *See* Def.'s Mem. in Supp. of Mtn. to Dismiss, at 3–4 (Dckt. No. 14) (emphasis in original). So, McDonald's argues that the claim is preempted by the IHRA.

On its face, the claim is inextricably linked to civil rights under the Illinois Human Rights Act. She basically alleges that she was forced out of the company for complaining about discrimination and harassment. The complaint rests on the existence of underlying civil rights – the right to be free from discriminatory and harassing conduct – and thus is preempted. *See Fortner v. RH Wine & Co.*, 2020 WL 5569831, at *2 (N.D. Ill. 2020) ("Here, Fortner alleges she was fired for complaining about discrimination based on her age. The right to be free from

15

discrimination based on age is a civil right. That means Fortner's common law retaliation claim is 'inextricably linked' to civil rights and is preempted by the Illinois Human Rights Act.") (citation omitted).

Aleman doesn't muster a convincing response. She argues that the claim is not preempted because it "does not arise solely out of the Title VII claim." *See* Pl.'s Resp. to Mtn. to Dismiss, at 11 (Dckt. No. 20). But that's not the question. The question is whether the claim arises solely out of rights and duties from the IHRA, not from Title VII.

Aleman argues that constructive discharge "can also occur when an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated." *Id.* Aleman puts forward a pair of cases, but they did not recognize a freestanding constructive discharge claim under Illinois law. Rather, they addressed constructive discharge as an element of a separate claim for retaliation. *See Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (considering constructive discharge as an element of retaliation claim under Title VII); *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 501–02 (7th Cir. 2010) (considering constructive discharge as an element of a First Amendment retaliation claim).

Constructive discharge can also serve as a theory for the adverse employment action element of a claim under the IHRA. *See Cooksey v. Bd. of Educ. of the City of Chicago*, 2014 WL 702386, at *2 (N.D. Ill. 2014) (citing *Steele v. Illinois Human Rights Comm'n*, 160 Ill. App. 3d 577, 112 Ill. Dec. 568, 513 N.E.2d 1177, 1179 (1987)). But it is not its own claim. "[W]here courts in Illinois have allowed a constructive discharge claim to proceed, it is because the claim was tethered to a violation of a specific statute . . . rather than presented as a separate count." *Id.* And to the extent that Aleman intended to bring a claim for a violation of the IHRA, that claim

would need to proceed under the IHRA's administrative procedures rather than before this Court in the first instance. *See* 775 ILCS 5/8-111(D); *see also Herrera*, 2021 WL 1175212, at *5.

One portion of Aleman's brief suggests that she intended to bring a claim for retaliatory constructive discharge. *See* Pl.'s Resp. to Mtn. to Dismiss, at 12 (Dckt. No. 20) ("Following all of Plaintiff's protected complaints, she was placed on PIP (Plan Improvement Process) . . . ."). But such a claim does not exist under Illinois law. *See Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 708 (7th Cir. 2004) ("[T]he [Illinois Supreme Court] 'has thus far declined to recognize a cause of action for retaliatory constructive discharge.'") (quoting *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 243 Ill. Dec. 46, 722 N.E.2d 1115, 1121 (1999)). So to the extent that Aleman is bringing a non-preempted claim, the claim fails as a matter of law. Count V is dismissed.

## Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss Count IV (intentional infliction of emotional distress) and Count V (constructive discharge).

Date: August 5, 2021

Steven C. Seeger
United States District Judge